IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,075

STATE OF KANSAS,
*Appellee*,

v.

JASON W. COTT,
*Appellant*.

SYLLABUS BY THE COURT

1.

Following sentencing, in order to correct manifest injustice a district court may set aside a judgment of conviction and allow a defendant to withdraw a plea.

2.

A district court's decision to deny a postsentence motion to withdraw a plea is reviewed under an abuse of discretion standard. A defendant bears the burden of establishing any such abuse of discretion.

Appeal from Johnson District Court; STEPHEN R. TATUM, judge. Opinion filed May 29, 2020. Affirmed.

*Michael J. Bartee,* of Michael J. Bartee, P.A. of Olathe, was on the brief for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Jason W. Cott takes this direct appeal from a district court order denying his postsentence motion to withdraw his pleas of guilty to two counts of premeditated murder.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2010, the State filed a complaint charging Cott with one count of premeditated murder in the death of his wife. On February 4, 2010, the State filed an amended complaint charging him with one count of capital murder for the killing of more than one person—his wife and unborn child she was carrying; one count of premeditated first-degree murder for the death of his wife; and one count of premeditated first-degree murder for the death of the unborn child. See K.S.A. 2019 Supp. 21-5419(c).

Ronald Evans was Cott's appointed counsel from early February 2010 through the time that he eventually entered guilty pleas. Soon after Evans' appointment, Cott brought up the idea of a plea bargain that would remove the possibility of a death penalty. In a letter dated March 12, 2010, Cott agreed to enter a guilty plea in exchange for a recommended sentence of life without parole. However, Cott changed his mind. The day before the parties planned to execute the agreement, he informed Evans that he did not want to enter into an agreement. At a hearing on April 7, 2010, Cott informed the State and the district court that he would not be a party to a plea agreement.

The case proceeded to preliminary hearing, which took place on August 17, 2010. Shortly afterwards, Cott again raised with Evans the possibility of a plea bargain. A few days later, on August 27, 2010, he entered into a plea agreement. Under the agreement,

2

the State dismissed the capital murder charge, and Cott pleaded guilty to the two premeditated murder charges. He also agreed that K.S.A. 21-4636 aggravating factors existed and that they were not outweighed by any mitigating factors.

At a hearing on September 16, 2010, the district court accepted the terms of the agreement and sentenced Cott to two concurrent hard 50 terms of life imprisonment.

On June 20, 2011, Cott filed a pro se motion to withdraw his guilty plea. Following a hearing, the district court denied his motion. He takes a belated appeal to this court.

ANALYSIS

K.S.A. 2019 Supp. 22-3210(d)(2) sets out the standard for allowing a defendant to withdraw a plea after sentencing: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). A court abuses its discretion if its decision is arbitrary or unreasonable, based on an error of law, or based on an error of fact. See, *e.g.*, *State v. Lyman*, 311 Kan. 1, 16, 455 P.3d 393, (2020). It is the defendant's burden to establish any such abuse of discretion. See, *e.g.*, *Johnson* 307 Kan. at 443; *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011).

The district court made several specific findings in holding that manifest injustice did not warrant voiding the plea agreement. First, Cott was not coerced into pleading guilty—not by the transmission to him of a letter from his mother, not by his trial counsel

3

pressing him to accept a plea, and not through the effects of mental strain. Second, Cott was not misled as to the nature of the sentence he would receive and he was aware he would have to serve at least 50 years. Finally, Cott was not compelled to accept the plea because of inadequate representation by his trial counsel. Cott disputes these findings on appeal.

K.S.A. 2019 Supp. 22-3210 distinguishes between withdrawing a plea before sentence, which requires "good cause," and withdrawing a plea after sentence, which may be done to correct "manifest injustice." Evidence was educed at the hearing on Cott's motion. This evidence provided support for the district court's conclusion that Cott failed to prove manifest injustice resulting from enforcement of the plea agreement.

Testimony at the hearing showed it was Cott who initially suggested to Evans that he was interested in a plea agreement. In a letter dated March 12, 2010, Cott agreed to enter a guilty plea in exchange for a recommended sentence of life without parole. The day before the hearing was set to finalize the agreement, he informed Evans that he had changed his mind and did not want to enter into an agreement. At a hearing on April 7, 2010, Cott informed the State and the district court that he would not be a party to a plea agreement.

According to Cott, Evans then told him he would visit again within 10 days, but it was more than a month or six weeks before Evans visited him again, and then for only a brief conversation through the regular visitation system using a telephone and a glass barrier. Cott testified that he asked Evans several times about the defense and the nature of the evidence against him, and Evans gave him "the idea that unless I took a plea he was not gonna help me." Evans did not state that attitude explicitly-but conveyed it by "the way he was doing and the things that he did say."

4

While they were awaiting trial, Evans had a stroke, which disabled Evans for a month or two. Evans nevertheless contended that he would be able to provide competent representation. No evidence was introduced suggesting his competence to practice was diminished as a result of the stroke.

During that time after Cott changed his mind about the initial plea agreement, Evans delivered to Cott a letter from Cott's mother, in which she urged him to take a plea because she did not want her son to be executed. Cott understood this letter to represent "just more pressure for me to take a plea."

Cott testified that these circumstances left him feeling that he had no choice but to take the plea because his lawyer was not helping him and he lacked the resources to defend himself. For those reasons, he considered his decision to enter into the plea agreement to be involuntary.

On cross-examination, Cott conceded that, at the plea hearing in 2010, the district court judge had asked him whether the choice to enter the guilty pleas was his own, and he had replied, "Yes. And, actually, I asked for it." Evans testified that Cott requested a new plea deal shortly after the preliminary hearing on August 17. According to Evans, Cott requested the hard 50 sentence the second time as well, and Evans explained to him at that time the consequences of such a sentence.

Before accepting the plea agreement, the district court judge asked Cott if he was thinking clearly, and Cott said he was. In response to other questions, Cott told the court that he had been able to meet and converse with Evans and that he understood the advice Evans gave him. When the judge asked him if he was satisfied with Evans'

5

representation, Cott replied, "Very well, sir." After sentencing, Cott sent Evans a letter thanking him and his staff for the good work they had done.

According to Cott, it was not explained to him that he would not be eligible for good time credit under the plea agreement. He discovered this later, while he was beginning to serve his sentence. He calculated that good time credit would have reduced his sentence by at least seven years. He testified that Evans never explained that the life sentence for which he bargained was a hard 50 term and that he would not be eligible for good time credit.

On cross-examination, however, Cott conceded not only that the plea agreement expressly stated that he would receive a life sentence with a mandatory minimum of 50 years but also that he understood that sentence at the time that he entered the plea. Evans testified that it was Cott who originally proposed a hard 50 sentence in exchange for the State not seeking the death penalty.

Cott complained that Evans engaged in minimal communication with him following the preliminary hearing, meeting with him only once between that hearing and the second plea hearing. The preliminary hearing was on August 17, 2010. Cott entered his guilty plea on August 27, 2010. This timeline was different from the one he portrayed at his hearing: only 10 days passed between the preliminary hearing and his guilty plea, and Evans met with him at least once during that time to discuss the plea and to deliver the letter from Cott's mother. This belied Cott's assertion that a long period of time—many weeks—passed between the preliminary hearing and any contact by Evans to go over the results of the preliminary hearing.

The district court's findings that Cott was aware of the consequences of his plea and that Evans provided adequate representation are supported by competent evidence. Cott essentially argues that he was coerced into a plea that he himself proposed and requested again shortly after he first backed away from it. He asked for the sentence that required a minimum of 50 years in prison, and he demonstrated through his conduct that he was not required to enter into a plea and that he could change his mind. There are no grounds to overturn the district court's findings.

Cott also contended that the delivery of a letter from his mother urging him to take a plea had a coercive influence on him. He did not articulate, however, how the letter deprived him of the ability to make a decision freely. The district court rejected his claim, a holding that is supported by our caselaw.

In *State v. Denmark-Wagner*, 292 Kan. 870, 877, 258 P.3d 960 (2011), the defendant argued that he was coerced into pleading guilty because his mother and sister wanted to see him sooner and be able to hug him during visitation. This court rejected the argument when applying the lower standard of good cause, stating:

> "Denmark-Wagner appears to have given heavy weight to the advice of others, but he made his own decision. We hold that the district judge did not err in refusing to grant the motion to withdraw Denmark-Wagner's plea as involuntary. Whatever family pressure existed did not rise to the level of good cause."

See also *State v. Edwards*, 309 Kan. 830, 836-37, 440 P.3d 557 (2019) (district court rejected defendant's assertion that pressure from mother undermined voluntariness of plea; Supreme Court declines to reweigh evidence).

CONCLUSION

Cott fails to demonstrate that the pressure his mother placed on him deprived him of the ability to make his own decisions.

Cott fails to show reversible error: he does not demonstrate that the district court's findings were arbitrary or unreasonable, were based on an error of law, or were based on an error of fact. We conclude the district court did not abuse its discretion and did not commit reversible error. We, therefore, affirm.

MICHAEL E. WARD, Senior Judge, assigned.[1]

_____

[1]**REPORTER'S NOTE:** Senior Judge Michael E. Ward was appointed to hear case No. 120,075 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.