NOT DESIGNATED FOR PUBLICATION

No. 123,925

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW I. VILLA,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed April 15, 2022. Affirmed.


*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.


*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.


PER CURIAM: After entering into a plea agreement, Andrew I. Villa sought to withdraw his plea after sentencing, arguing his appointed counsel provided ineffective assistance. After a hearing, the district court denied him relief. Villa now appeals, using the same arguments he made to the district court and relying mainly on his own testimony. But the problem with Villa's argument is that he asks us to view the same evidence as the district court but come to the opposite conclusion. This we cannot do. As the record supports the district court's findings, we affirm its decision to deny Villa's motion to withdraw plea.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2016, the State charged Villa with a series of offenses stemming from events at a gas station the month before. The third amended complaint charged Villa with robbery, aggravated robbery, two counts of fleeing or attempting to elude an officer, aggravated endangering a child, and aggravated burglary. The district court appointed Jama Mitchell as Villa's attorney, and the two met for the first time in November 2016. In March 2018, Villa filed a pro se motion to dismiss Mitchell, but he voluntarily withdrew it during the hearing on the motion later the same month.

In April 2018, Villa pled guilty to one count each of robbery, fleeing or attempting to elude an officer, aggravated endangering a child, and aggravated burglary. The district court later sentenced Villa to 143 months' imprisonment and ordered him to pay restitution to a victim involved in the case. Villa appealed the district court's restitution order; another panel of this court vacated the restitution order and remanded the case to the district court with directions. *State v. Villa*, No. 119,780, 2019 WL 5090350, at *4 (Kan. App. 2019) (unpublished opinion).

Pursuant to the remand, in March 2020, the district court conducted a new restitution hearing and recalculated the amount of restitution but did not disturb the previously imposed prison sentence. Five months later, Villa filed a pro se motion to withdraw plea. In the motion, Villa alleged various grounds of ineffective assistance of counsel regarding Mitchell.

The district court held an evidentiary hearing on Villa's motion in March 2021. During the hearing, Villa said he suffered from mental health issues throughout his life, which he discussed with Mitchell. At some point, Villa spoke with a psychiatrist about those issues and a previous diagnosis of schizophrenia. Villa met with the psychiatrist multiple times and believed the psychiatrist issued a report containing findings from the

meetings. However, Villa alleged that Mitchell never showed him that report. Instead, she told him she did not believe they could use his mental health issues as a defense. Despite Villa's insistence that his mental health issues were the primary cause of the incident, Mitchell maintained that they could not use his mental health issues as a defense during a trial.

Villa said Mitchell provided him with the discovery in the case, but he claimed Mitchell took months to provide it to him. Villa also claimed Mitchell failed to retrieve video footage from the gas station where the crimes took place. During Villa's preliminary hearing, a worker from the gas station where the robbery occurred testified that Villa pushed her against a wall before he stole the cash register. But Villa claimed he never put his hands on anyone and he believed the video footage would show that the worker who testified had lied about what occurred.

Villa said he never wanted to plead guilty and claimed Mitchell coerced him into doing so by essentially telling him he did not have a chance of winning the case. Villa also felt that Mitchell misled him by telling him he would receive a harsher sentence if a jury convicted him rather than if he pled guilty. Similarly, he claimed Mitchell told him that he would have to go to trial if he did not plead guilty because no more continuances would occur. Villa could not recall precisely when Mitchell began plea negotiations, but he claimed she only brought him one plea offer throughout the case. He did not believe he received any benefit from pleading guilty because the offenses in the plea agreement were what he felt he should have originally been charged with.

On cross-examination, Villa said he did not want to voluntarily withdraw his motion to dismiss Mitchell, but he did so because an unidentified person told him to. Villa acknowledged that he did not renew the motion to the district court before he pled guilty. Similarly, he mentioned no problems with Mitchell to the district court during his sentencing hearing.

Villa acknowledged that he and Mitchell discussed his mental health issues while she represented him. He also acknowledged that Mitchell arranged to have a psychiatrist discuss those issues with him. He again claimed Mitchell failed to discuss possible defenses with him. He believed she failed to adequately investigate the facts of the case and failed to adequately explain the charges against him. When asked about the camera footage, Villa believed it would be important to show the gas station worker lied because he would not be charged with aggravated robbery if he never touched the worker.

Villa then renewed his claim that he never wished to plead guilty but did so because he felt forced to. He also could not recall whether he and Mitchell ever discussed the plea agreement. Yet he acknowledged that he signed the plea agreement and the acknowledgment of rights forms. He also said he understood that he risked getting a harsher sentence than was recommended in the plea agreement if a jury convicted him at trial.

Mitchell testified after Villa. She said that during their first meeting in November 2016, Villa told her he was under the influence of methamphetamine when the offenses occurred. During that same meeting, Mitchell explained to Villa the difference between specific intent crimes and general intent crimes.

Mitchell said Villa's mental health issues first came up in August 2017 when she visited him in jail. The next month, Mitchell and Villa discussed the issues further, and Mitchell discovered that Villa had previous mental health diagnoses. Though she did not notice any signs of mental health impairment outside one conversation, she contacted a psychiatrist to perform a mental health evaluation. By mistake, a competency evaluation was performed instead. The psychiatrist found Villa to be competent but also believed a psychological evaluation could be helpful. Mitchell agreed, and the psychiatrist then performed the evaluation to determine whether Villa had a potential defense of mental disease or defect. When asked what the evaluation revealed, Mitchell stated:

4

"Dr. Parker met with Mr. Villa, performed some tests and issued a report in February, I believe, of 2018, indicating that he had not diagnosed Mr. Villa with schizophrenia. His report indicated that that might provide a defense for Mr. Villa; but, upon further conversations with Mr. Villa, the use of methamphetamine, Mr. Villa admitted the use of methamphetamine in the days before the charged offenses occurred, and so the doctor was unable to determine whether he was suffering from the effects of methamphetamine or from a mental disease or defect."

These conclusions led Mitchell to believe that a mental disease or defect defense would not be effective, a conclusion she shared with Villa the same month the psychiatrist completed the report. She could not recall whether they ever discussed the possibility of a voluntary intoxication defense, but she remembered going through the elements of the crimes the State charged Villa with after he completed the psychological evaluation.

Mitchell believed the plea agreement had been available for a long time before Villa pled guilty. But until he pled guilty, she had been negotiating with the State to be allowed to argue for probation or departures. Mitchell said she discussed the plea with him the Friday and Sunday before his trial, and Villa signed the acknowledgment of rights and plea agreement forms that Sunday. Villa ultimately pled guilty on April 16, 2018, the Monday his trial was scheduled to begin. Had Villa decided he did not want to plead guilty, Mitchell said she would have been prepared to go to trial.

As part of her preparation, Mitchell reviewed the evidence, including video footage. She recalled seeing the video Villa complained about, but she could not recall whether she made it available for him to see. That said, Mitchell remembered sharing the discovery from the case with Villa. She also remembered discussing the difference between aggravated robbery and robbery and how Villa would be pleading guilty to the lesser of the two. Mitchell denied ever telling Villa he did not have a viable defense in the case.

On cross-examination, Mitchell reaffirmed that she familiarized herself with the evidence in the case and would have been ready for trial if Villa did not plead guilty. Similarly, she reaffirmed that Villa decided to seek plea negotiations and ultimately plead guilty. Mitchell said she and Villa discussed the plea agreement nearly every time the two spoke because Villa made getting a plea agreement for probation his main priority. Mitchell continued to negotiate the terms of the plea with the State until the State made it clear it would not agree to probation or make any better offers. At that point, Villa decided to plead guilty. Though Mitchell advised him he should accept the plea, she denied ever advising him that he had little chance to succeed at trial.

At the end of the hearing, the district court took Villa's motion under advisement. The following month, the district court issued its ruling denying the motion.

Villa timely appeals.

DID THE DISTRICT COURT ERR IN DENYING VILLA'S MOTION TO WITHDRAW PLEA?

On appeal, Villa asserts the district court erred in denying his postsentence motion to withdraw plea because his counsel was ineffective.

The standard for allowing a defendant to withdraw his or her plea after sentencing is set out in K.S.A. 2020 Supp. 22-3210(d)(2): "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." The three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), are applied when determining whether a movant has established manifest injustice: "'"(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" [Citations omitted.]" *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

6

A defendant who alleges ineffective assistance of counsel due to deficient performance in his or her postsentence motion to withdraw plea "must meet constitutional standards to demonstrate manifest injustice." *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011). Put differently, Villa "must meet the commonly known *Strickland* test and show that (1) [Mitchell's] performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for [Mitchell's] errors, the result of the proceeding would have been different." *Bricker*, 292 Kan. at 245-46; see *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 476 U.S. 1267 (1984).

We review a district court's decision to deny a postsentence motion to withdraw plea for an abuse of discretion. "A court abuses its discretion if its decision is arbitrary or unreasonable, based on an error of law, or based on an error of fact. [Citation omitted.]" *State v. Cott*, 311 Kan. 498, 499, 464 P.3d 323 (2020). Villa, as the movant, bears the burden to prove the district court erred in denying the motion. See *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019). We review the district court's factual findings for substantial competent evidence and "do not reweigh the evidence or assess witness credibility." *Johnson*, 307 Kan. at 443.

In denying Villa's motion, the district court found that Mitchell met with Villa and discussed his mental health issues. Those discussions led Mitchell to arrange interviews with a psychiatrist to examine Villa's competency to stand trial, as well as determine whether any diagnoses regarding Villa's mental health were necessary. After the psychiatrist issued his findings, Mitchell decided Villa's mental health issues did not present a viable defense because the psychiatrist could not conclude whether Villa suffered from the effects of mental health issues or the effects of methamphetamine use on the day he committed the crimes.

The district court also found that Mitchell discussed with Villa the elements of the crimes he had been charged with. This included discussions about the difference between aggravated robbery and robbery, as well as the difference between specific intent crimes and general intent crimes. Similarly, the district court found that Mitchell met with Villa on April 13 and 15 of 2018, the Friday and Sunday before he pled guilty on April 16, 2018. During those meetings, Mitchell discussed the plea agreement and acknowledgment of rights forms with Villa and explained the sentencing ramifications of pleading guilty. The district court concluded that Villa decided to seek and ultimately enter into the plea agreement.

The district court rejected Villa's contention that Mitchell told him he would not have a viable defense during trial and would be automatically sentenced to a harsher sentence if found guilty. Instead, Mitchell provided Villa with candid advice about whether he should accept the plea. The district court also rejected Villa's contention that he did not receive a benefit from pleading guilty, pointing to the fact that he did not receive the maximum sentence. For these reasons, the district court found that Mitchell did not provide Villa with ineffective assistance of counsel.

In his brief, Villa does not dispute the district court's conclusions. Instead, he relies mostly on his own testimony from the hearing on his motion to withdraw plea. Essentially, he asks us to reweigh the same evidence the district court considered but come to the opposite conclusion. Given our standard of review, this is something we cannot do.

Villa claims three instances of ineffective assistance of counsel: (1) Mitchell allegedly told Villa he did not have a chance to prevail at trial because he did not have a viable defense; (2) Mitchell allegedly failed to adequately inquire or investigate Villa's mental health issues; and (3) Mitchell allegedly failed to provide Villa with the video surveillance footage.

However, the record does not support Villa's claim concerning what Mitchell allegedly told him about his chances of prevailing at trial. Villa cites nothing aside from his own testimony at the motion to withdraw plea hearing to support this allegation. Moreover, he ignores both Mitchell's testimony and the district court's findings.

On both direct examination and cross-examination during the motion to withdraw plea hearing, Mitchell said she never would have told Villa he did not have a defense. She said she never tells her clients they do not have a defense because the State failing to prove him guilty beyond a reasonable doubt is always an available defense. Similarly, she said she never gives her clients the odds of prevailing at trial. When denying Villa's motion, the district court "reject[ed] the contention . . . that Ms. Mitchell gave him the impression he would automatically be found guilty by a jury and be sentenced to a harsher prison term if he didn't plead as charged. Again, . . . Ms. Mitchell did not say he would automatically be found guilty." This conclusion is supported by the record.

As to Villa's assertion that Mitchell failed to adequately investigate his alleged mental health issues, he claims Mitchell failed to resolve whether Villa's mental health issues caused him to commit the series of offenses to which he later pled guilty. He also asserts that Mitchell failed to explain why a mental disease or defect defense would not be available at trial.

To support his claim, Villa cites K.S.A. 2020 Supp. 21-5209, which states: "It shall be a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the culpable mental state required as an element of the crime charged. Mental disease or defect is not otherwise a defense." After citing the statute, Villa argues "that it was unreasonable for [Mitchell] to fail to follow up on the issue of his mental health and seek a final determination of the question of whether mental illness or drug use caused" his conduct.

As explained above, Mitchell first learned about Villa's mental health issues in August 2017. After further discussions, she contacted a psychiatrist to perform a mental health evaluation. By mistake, the psychiatrist performed a competency evaluation instead, and the psychiatrist found Villa to be competent. This conclusion meshed with Mitchell's belief that Villa was competent. Even so, the psychiatrist believed a mental health evaluation would be helpful, and Mitchell agreed. After performing the evaluation and having follow-up discussions with Villa, the psychiatrist could not conclude that Villa's mental health issues caused his conduct because Villa told the psychiatrist he had used methamphetamine in the days before the charged offenses occurred.

Even before the psychological evaluation, Mitchell also questioned the extent to which drug use impacted Villa's actions because Villa told her during their first meeting he had been under the influence of methamphetamine when the offenses occurred. Additionally, outside of one conversation in September 2017, Mitchell said Villa never manifested any signs of mental health impairment throughout her representation. Taken together, the results of the mental health evaluation and her own observations led Mitchell to believe that a mental disease or defect defense would not be effective in the case.

In *Strickland*, the Supreme Court explained that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690-91. Villa argues Mitchell's investigation into his mental health issues was unreasonable, but he fails to explain how completing a competency evaluation and a mental health evaluation renders Mitchell's efforts unreasonable. He appears to argue the psychiatrist did not resolve whether his mental health issues caused his conduct, but Mitchell said the psychiatrist concluded he could not offer the mental disease or defect defense based on Villa's drug use.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Trial management, including the decisions made regarding what arguments should and should not be pursued, is the lawyer's province. *McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500, 1508, 200 L. Ed. 2d 821 (2018).

The district court concluded that Mitchell's investigation into Villa's mental health issues was reasonable, as was her decision that a mental disease or defect defense would not be effective at trial. These conclusions are supported by the record.

For his final claim, Villa argues that Mitchell failed to allow him to view the video surveillance footage from the gas station he robbed. Villa asserts the video would have shown that he did not make physical contact with the worker from the store, which refuted the worker's testimony at the preliminary hearing.

When asked about the surveillance video, Mitchell believed she saw it, but she could not recall whether she made it available for Villa to view. Mitchell did not recall seeing a push in the video, but she remembered telling Villa that he would be pleading guilty to a reduced charge of robbery instead of aggravated robbery. Mitchell also remembered discussing defenses with Villa during these conversations. Villa stresses not viewing the video when he argues the video would have provided him a defense to the aggravated robbery charge, but he fails to explain how viewing the video is any different than discussing the video's contents with Mitchell. Practically speaking, Villa knew what the surveillance footage showed even without seeing it because the video portrayed his actions. After viewing it, Mitchell discussed the surveillance footage and explained that Villa would not be pleading guilty to aggravated robbery. And during these conversations, Mitchell also discussed possible defenses with Villa.

11

Even assuming Villa can establish deficient performance under the first prong of the *Strickland* test on this claim, he cannot establish prejudice under the second prong of the ineffective assistance of counsel inquiry. See *Bricker*, 292 Kan. at 246 ("[T]here is a reasonable probability that but for [counsel's] errors, the result of the proceeding would have been different."). Villa's primary contention about the video surveillance footage is that it would show he did not push the gas station worker. And consequently, the State would be unable to prove him guilty of aggravated robbery due to a lack of bodily harm. See K.S.A. 2020 Supp. 21-5420(b)(2) (requiring infliction of bodily harm upon a person as element of offense).

But this contention ignores the fact that Villa never pled guilty to aggravated robbery; he pled guilty to robbery. To be convicted of robbery, the State had to prove that Villa "knowingly [took] property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2020 Supp. 21-5420(a). Put differently, convicting Villa of robbery did not require the State to prove he inflicted bodily harm upon a person. See K.S.A. 2020 Supp. 21-5420(a); cf. K.S.A. 2020 Supp. 21-5420(b)(2). Thus, even if the video showed that Villa never pushed the worker from the gas station where the robbery occurred, he could still have been convicted of robbery. The district court also relied on this fact when rejecting Villa's motion.

Additionally, Villa's actions throughout the case undercut his claims on appeal. At one point, he filed a pro se motion seeking to replace Mitchell, but he withdrew the motion soon after. Villa also signed the plea agreement and acknowledgment of rights forms. A portion of the plea agreement stated that Villa made the decision to voluntarily accept the plea, as did the acknowledgment of rights form. Another portion of the acknowledgment of rights form stated that Villa agreed he was satisfied with counsel's representation. During his plea hearing, the district court asked Villa whether he had any questions about the plea agreement, and he said he did not. Similarly, the district court

asked Villa during sentencing whether any reason existed to prevent him from being sentenced, and Villa said he had no reason.

The record establishes that Mitchell did not provide ineffective assistance of counsel. Similarly, the record establishes that Mitchell did not coerce Villa into pleading guilty. For these reasons, we affirm the district court's denial of Villa's postsentence motion to withdraw plea.

Affirmed.