(186 P.3d 1220)
No. 98,486

STATE OF KANSAS, *Appellee*, v. BRAD OLIVER, *Appellant*.

Opinion filed July 11, 2008.

B. *Joyce Yeager*, of Yeager Law Firm, L.L.C., of Overland Park, and *Gerald E. Wells*, of Lawrence, for appellant.

*Brad M. Lippert*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

MCANANY, J.: Brad Oliver, who pled no contest to possession of marijuana with the intent to sell within 1,000 feet of a school, appeals the district court's denial of his motion to withdraw his plea. He also claims misconduct by the district magistrate judge and district judge who were involved in his case. Our review discloses that Oliver has failed to demonstrate any error by the district court in denying his motion. Accordingly, we affirm.

Oliver supplied marijuana to several friends, including Paul Egner, while on a fishing outing. Egner was on probation at the time. While there, Oliver sold a bag of marijuana to Christine Kaler. The next day, Oliver was again at the lake with Brandon Schober, who was also on probation. Schober's probation officer, Kenneth Ray Blevins, took a urine sample from Schober that day to test for the presence of drugs. Blevins and Steve Linden, an investigator for the Nemaha County Sheriff's Department, also contacted Egner about a drug test. Egner stated that he would not pass because he had used drugs supplied by Oliver the previous day.

A confidential source informed Linden that Oliver had sold marijuana in the past and that he stored it in the upstairs bedroom of his home. Based upon this information and the events of the preceding days, Linden prepared an affidavit for a warrant to search Oliver's residence. District Magistrate Judge James B. O'Connor issued the search warrant. The search that followed uncovered marijuana, various items of paraphernalia used for consumption and sale of the drug, and $260 in cash. Oliver returned to the house during the search and was arrested.

The State charged Oliver with possession of marijuana with the intent to sell within 1,000 feet of a school, misdemeanor possession of drug paraphernalia, felony possession of drug paraphernalia, and failure to affix drug tax stamps. Oliver waived a preliminary hearing and eventually entered into a plea agreement with the State, pur-

suant to which he agreed to plead no contest to possession of marijuana with the intent to sell within 1,000 feet of a school. In return the State agreed, among other things, to dismiss the remaining counts and to recommend a downward departure sentence of 48 months with probation. Apparently the 48 months agreed upon was comparable to a 56-month sentence after credit for time served. Accordingly, the agreement provided that if the court imposed a sentence of more than 56 months, the State would not oppose Oliver's motion to withdraw his plea. The district court accepted Oliver's plea and imposed a sentence of 56 months but with 36 months' probation.

Five months later, the State moved to revoke Oliver's probation. The district court sustained the motion and ordered Oliver to serve his underlying prison sentence. Oliver appealed the probation revocation, and the Kansas Supreme Court affirmed. *State v. Oliver*, No. 95,331, unpublished opinion filed June 8, 2007. While his appeal was pending, Oliver moved to withdraw his plea. Following a 2-day hearing, the district court found no manifest injustice and denied the motion.

### Denial of the Motion to Withdraw

As noted earlier, Oliver claims not only abuse of discretion in denying the motion to withdraw his plea, but also judicial misconduct in the handling of his case. However, since a valid plea waives all nonjurisdictional defects in the criminal proceedings, the claims of judicial misconduct are relevant only to the extent that they undermine the validity of Oliver's plea. See *State v. Edwards*, 281 Kan. 1334, 1340-41, 135 P.3d 1251 (2006) (citing *United States v. Broce*, 488 U.S. 563, 569, 102 L. Ed. 2d 927, 109 S. Ct. 757 [1989]).

We will discuss the claims of judicial misconduct in a moment. First, we must address Oliver's underlying claim that the court erred in denying his motion. He begins his argument by stating the legal standards the district court must apply in considering his motion. The remainder of his argument consists of the following:

"Defendant established that counsel was ineffective in the manner in which he negotiated the plea. Defendant has demonstrated that he should be allowed to withdraw his plea because the pattern of conduct which is demonstrated clearly

establishes that there was a plan to obtain a plea agreement: 1) counsel did not or would not attack the warrants; 2) there was inadequate information provided about the drug use, veracity, and intimidation of the informants; 3) evidence could have been suppressed if an attempt had been made to do so; 4) counsel developed no pre-trial strategy and did not interview witnesses; 5) witnesses were treated unfairly; 6) prejudice was demonstrated by the fact that Defendant was subjected to more stringent standards for probation revocation; 6) [sic] the preliminary hearing was delayed until after a new judge was assigned; 7) Judge O'Connor displayed prejudice at several points in the proceedings; 8) the factual record at sentencing was in error in several respects; 9) Defendant could not convince the attorney who was appointed for post-conviction proceedings to proceed with motions pertaining to these issues on appeal; and 10) the new evidence Defendant provided after the factual record for appeal was complete confirms Defendant's contentions. Defendant established that his plea was not knowingly entered because the extent of defense counsel's efforts left him no option but to proceed in the manner counsel suggested."

This is not argument. This is nothing more than a list of allegations taken from Oliver's previous motions. To warrant the withdrawal of his plea after sentencing, Oliver was required to show the district court that relief was necessary to correct a manifest injustice. K.S.A. 22-3210(d). To establish "manifest injustice," Oliver had to demonstrate to the district court facts showing that it would be obviously unfair or shocking to the conscience not to permit him to withdraw his plea. *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). On appeal, his task is to demonstrate that the district court abused its discretion in denying his motion. To do so, Oliver is required to show us that the district court failed to properly evaluate whether he was represented by competent counsel; whether he was misled, coerced, mistreated, or unfairly taken advantage of; and whether his plea was fairly and understandingly made. See *State v. Adams*, 284 Kan. 109, 114, 158 P.3d 977 (2007). In his appellate brief Oliver argues that he was misled, coerced, mistreated, or unfairly taken advantage of by simply restating that he was misled, coerced, mistreated, or unfairly taken advantage of. Recital of a list of grievances is not argument. An issue which is raised but not adequately argued is deemed abandoned. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008). Such is the case here. This leaves us with the claims of judicial misconduct by

District Magistrate Judge O'Connor and District Judge Patton. We turn to those claims.

*Judicial Misconduct of Judge O'Connor*

Oliver claims Judge O'Connor failed to recuse himself from presiding over Oliver's preliminary hearing, which he should have done because he issued the search warrants in the case. Our review of this issue is unlimited. *State v. Gaither*, 283 Kan. 671, 681-82, 156 P.3d 602 (2007). Since Oliver failed to request O'Connor's recusal, he has not properly preserved the issue for review. *State v. Alderson*, 260 Kan. 445, 453, 922 P.2d 435 (1996). However, Oliver counters that his lawyer was ineffective for not seeking Judge O'Connor's recusal. The standards for assessing counsel's conduct are well known to the parties and can be found in *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007) (ineffective assistance of counsel standard), and *Barahona*, 35 Kan. App. 2d at 610 (application of the standard to withdrawal of a plea). In this context, prejudice is established only if Oliver shows that he would not have entered his plea absent his counsel's deficient conduct.

Oliver claims K.S.A. 22-2301(2) prohibited Judge O'Connor's participation in the preliminary hearing. We disagree. K.S.A. 22-2301(2) applies in the unusual situation in which a judge orders the prosecutor to institute criminal proceedings against a defendant. Such a judge may not preside over the resulting case. Judge O'Connor did not order that Oliver be prosecuted, he merely issued the search warrant based upon the affidavit submitted to him. Besides, Oliver's preliminary hearing was to determine whether there was probable cause to proceed with the prosecution. The propriety of the search warrant and the admissibility of the evidence collected in the search would be dealt with later in a motion to suppress, which would have been heard by a district judge, not the magistrate. See K.S.A. 20-302b(a).

Further, Oliver fails to establish prejudice. He fails to demonstrate how his decision to waive a preliminary hearing presided over by Judge O'Connor affected his decision to enter a plea before Judge James A. Patton. His waiver of a preliminary hearing did not affect his right to challenge the search warrant through a motion

to suppress before the district judge. Rather than challenge the State's evidence through such a motion, Oliver chose to negotiate a plea. He fails to show any causal connection between his plea and his waiver of a preliminary hearing.

Oliver also contends that Judge O'Connor exhibited bias by an abusive remark at his first appearance. We have no transcript of those proceedings or of the judge's claimed remark. We only have Oliver's recounting of what he claimed the judge said. In any event, when asked whether the judge's remark "would . . . have made a difference as to your plea, your sentence or the ultimate revocation of your probation," Oliver conceded that "it wouldn't have made a difference." Oliver fails to demonstrate prejudice.

## *Judicial Misconduct of Judge Patton*

Finally, Oliver contends that Judge Patton, who accepted Oliver's plea, improperly participated in plea negotiations. In this regard, we suffer from either an inadequate record on this topic or Oliver's failure to direct us to the relevant portions of the record. We are not required to scour the record to uncover support for factual assertions in an appellate brief for which no meaningful citation to the record is provided. Supreme Court Rule 6.02(d) (2007 Kan. Ct. R. Annot. 37); *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008). Nevertheless, it appears that the parties sought the advice of Judge Patton in advance of the plea hearing on whether the terms a proposed plea agreement they had already negotiated would be acceptable to the court. In his appellate brief Oliver refers to this as seeking the judge's "assent to the negotiated plea agreement."

Oliver relies on *State v. Byrd*, 203 Kan. 45, 50, 453 P.2d 22 (1969), in which the court discusses the plea bargaining process and states:

"[The] standards [recommended by the Advisory Committee on the Criminal Trial to the American Bar Association Project on Minimum Standards for Criminal Justice in February 1967] distinguish between the role of the trial judge and that of the prosecutor. The trial judge should not participate in plea discussions. Such discussions between the trial judge and the defendant give the appearance of improper bargaining between a malefactor and Justice."

There was no claim in *Byrd* that the trial judge participated in the plea negotiations, and the court gave no guidance on what constitutes judicial participation. Oliver cites no other Kansas authority for support or guidance. Hence, we must look to the experiences of other courts.

In Oliver's case, the parties approached the court with a proposed agreement in advance of Oliver's plea and sentencing. This contrasts with the circumstances found in *Matter of Cox*, 553 A.2d 1255 (Me. 1989), a judicial disciplinary proceeding. In *Cox*, the defendant in the underlying criminal case was charged with assault. On the morning of trial, the trial judge initiated a detailed discussion of plea alternatives and proposed a sentence he would impose if the defendant would forego a trial and plead guilty. The proposed sentence was significantly less severe than the sentence he would impose if the defendant proceeded to trial and was found guilty. After further discussions, the State agreed to the judge's proposal, but the defendant did not. Following the ensuing bench trial the defendant was found guilty. He was sentenced to 9 months in jail. The Maine Supreme Court observed:

> "When a judge participates in the specifics of a plea negotiation, that behavior runs afoul of the fundamental values set forth in these Canons. It also transgresses the explicit provision of Rule 11(e) of the Maine Rules of Criminal Procedure that 'the court shall not participate in the negotiations of the specific terms of the plea agreement'; and ignores case law that clearly limits the judge's role in plea negotiations. [Citation omitted]." 553 A.2d at 1257.

In *United States v. Bruce*, 976 F.2d 552, 555 (9th Cir. 1992), the court considered Fed R. Crim. Proc. 11(e)(1) which provides that " '[t]he court shall not participate in any such discussions.' " This is similar to the standard adopted by the Kansas Supreme Court in *Byrd*. In *Bruce*, the district judge asked the prosecutor to outline on the record the government's proposed plea agreement. There followed a series of questions and comments in which the judge indicated support for the proposed agreement and opined that it would be in the defendant's best interest to accept it. The judge urged the defendant to think seriously about it. The following day the defendant accepted the agreement. On appeal of the denial of the defendant's motion to withdraw his plea, the court inter-

preted Rule 11(e)(1) to create an absolute prohibition against a judge's participation in the plea process until the parties concluded a final agreement and disclosed that agreement in open court. "Rule 11(e)(1) simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court." 976 F.2d at 556. Accordingly, the court found plain error that entitled the defendant to withdraw his guilty plea.

The holding in *Bruce* was later discussed in *United States v. Frank*, 36 F.3d 898, 902-03 (9th Cir. 1994), in which the court observed that *"Bruce* is good law. . . . The problem with appellant's use of it is that his attorney would have us read it as quotations in the air, instead of as a case." *Frank*, 36 F.3d at 902. The court noted:

"The purposes of Rule 11(e)(1) are to keep the judge from shaping the plea bargain or persuading the defendant to accept particular terms, and to preserve judicial impartiality. *See Bruce*, 976 F.2d at 556-57; Fed.R.Crim.P. 11 Advisory Committee Note on 1974 Amendment. The judge in the case at bar, unlike the judge in *Bruce*, was not trying to shape the agreement or persuade either side to accept it. The colloquy took place after, not before, the parties had concluded their agreement, and the prosecutor had laid it out in open court. True, the agreement was not yet formal and binding. It was not yet in writing and the defendant had not yet said 'guilty' in response to the question 'what is your plea.' That question and answer take place at the end of the Rule 11 colloquy, and many plea agreements are oral. The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge." *Frank*, 36 F.3d at 902-03.

In *Frank*, the parties advised the district judge in the third day of a jury trial that they had reached a plea agreement. The judge kept the jury sequestered while counsel informed him of the deal. The parties then placed their agreement on the record, the jury was discharged for the day, and the following day the parties signed the plea agreement and the defendant entered his plea. This stands in contrast to *Bruce*. "In *Bruce*, the defendants had not agreed to the deal worked out between the lawyers. The judge was trying to talk them into it." *Frank*, 36 F.3d at 902.

The judicial conduct approved in *Frank* has been formally recognized by rule in Connecticut. *State v. Fullwood*, 194 Conn. 573,

580, 484 A.2d 435 (1984), states: "[O]ur rules of practice expressly authorize the trial judge to do no more than to indicate whether a proposed agreed disposition may be accepted or rejected."

These cases provide a clear, fair, and workable standard for trial judges. Judges should not participate in the negotiation of the proposed terms of a plea agreement, nor should they encourage the defendant to accept or reject any of the proposed terms.

The problem for Oliver is that he cites nothing in the record that establishes that Judge Patton engaged in either of these activities. He does not demonstrate that the trial judge actively participated in plea negotiations or that the judge urged him to accept the agreement. As Oliver testified at the hearing on his motion to withdraw his plea:

"Q. The reason for this conference is because you wanted to be reasonably assured that the court would be amenable to your plea agreement; is that correct?

"A. I wanted a guarantee. If I didn't have that guarantee we would have went to trial.

"Q. And that was the reason for that conference, correct?

"A. Exactly. I wanted a guarantee I'd walk out of court that day and you granted it and I walked out."

The deal had been struck. Oliver knew what he wanted. He got it. Under the circumstances presented, Judge Patton's conduct was not improper.

Oliver fails to demonstrate that the district court abused its discretion in denying his motion to set aside his plea.

Affirmed.