NOT DESIGNATED FOR PUBLICATION

No. 118,077

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAIAH COPRIDGE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed September 21, 2018. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.


PER CURIAM:  Isaiah Copridge appeals from the district court's decision to deny his postsentence motion to withdraw his guilty pleas to one count each of second-degree murder and aggravated robbery. Copridge argues that he did not knowingly and understandingly enter his pleas because (1) there was an insufficient factual basis for his pleas, (2) he was coerced and misled into entering his pleas, and (3) his plea counsel was ineffective. For the reasons stated below, we affirm the decision of the district court.

1

FACTS

On October 23, 2015, the State charged Copridge with one count each of first-degree murder and aggravated robbery. The State also charged Eboni Fingal, Copridge's girlfriend and mother of his two children, with the same crimes. The charges stemmed from the shooting death of Rayan I. Baba in Wichita, Kansas.

On December 9, 2015, the district court appointed attorney Casey J. Cotton to represent Copridge. Quentin Pittman, an attorney in Cotton's law firm, ultimately represented Copridge during all times relevant to this appeal. Pursuant to plea negotiations with the State, Copridge agreed to plead guilty to an amended charge of second-degree murder and a single count of aggravated robbery. In exchange, the State agreed to recommend that Copridge be sentenced to the mid-number in the appropriate grid box for each count and that the sentences run concurrent with each other and consecutive to the sentence in a separate case.

On January 14, 2016, Copridge appeared before the district court at a plea hearing. Before accepting Copridge's pleas, the district court engaged in a detailed and comprehensive colloquy with Copridge to ensure that Copridge fully understood the charges, the details of the plea agreement and its consequences, the rights he would forgo by entering the pleas, and the consequences of pleading guilty.

The district court first explained Copridge's right to a preliminary hearing and verified that Copridge wanted to waive this right. The court then placed Copridge under oath, and Copridge swore to give truthful answers to all of the court's questions. The court asked Copridge if he had the opportunity to review the plea agreement with his attorney. Copridge responded in the affirmative and stated that he understood the plea agreement, had no questions about the plea agreement, and wanted to enter into the plea agreement. Copridge denied that anyone was forcing, threatening, or promising him

2

anything in exchange for his pleas. The court then went through a detailed discussion to ensure that Copridge understood the rights he was giving up by entering the pleas. On further questioning, Copridge said he understood that by pleading guilty to the charges against him, he would be convicted without a trial and without presenting any defense to the charges, and that he would be giving up his right to appeal his convictions.

The court explained the sentence Copridge faced and the sentence recommendation set forth in the plea agreement. Copridge indicated his understanding of the sentence possibilities as well as the fact that the sentencing judge would not be bound by the plea agreement. Copridge denied consuming any alcohol, medication, or other drugs that would affect his understanding of his rights or his ability to make decisions. Copridge also denied having any medical or physical issue that affected his ability to understand or make decisions at the hearing. Finally, Copridge expressed satisfaction with his treatment by the court and with Pittman's representation.

After Copridge communicated his desire to give up his rights and enter his pleas, Copridge pled guilty to second-degree murder and aggravated robbery. The district court then recited the facts and elements of the crimes alleged in the amended complaint and asked Copridge if the facts and elements were true and accurate. Copridge responded affirmatively. After the State conveyed its approval of the factual basis, the court accepted Copridge's guilty pleas.

At sentencing, the district court followed the plea agreement and imposed a controlling 253-month prison sentence.

On October 31, 2016, Copridge filed a pro se motion to withdraw his pleas. In this motion, Copridge alleged, in relevant part: (1) He was misled and coerced into taking the pleas based on Pittman's advice to him that pleading guilty was the only way that his girlfriend Fingal would be granted probation, yet Fingal was sentenced to prison; (2)

Pittman did not provide to him any discovery or investigate whether it would be proper to file a motion to suppress evidence discovered on a phone seized from Copridge's brother's car; and (3) his pleas were not fairly and understandingly made because the factual basis for the pleas was insufficient.

The district court scheduled a hearing on the motion and appointed counsel to represent Copridge. At the hearing, the district court heard testimony from Copridge and Pittman.

*Copridge's testimony*

Copridge testified that during his first meeting with Pittman, they did not discuss any potential defenses and Pittman did not provide him with a copy of the probable cause affidavit or any discovery materials. According to Copridge, Pittman said only that "he got the case beat." Copridge acknowledged that he did receive the probable cause affidavit at his second meeting with Pittman, but he did not understand all the factual allegations contained in it and did not discuss the contents of the affidavit with Pittman. Copridge said that he and Pittman discussed the search of a cell phone seized from his brother's car and the possibility of filing a motion to suppress the evidence, but they did not discuss whether the search was consensual or whether a search warrant was obtained. Copridge admitted that he had no evidence showing that law enforcement had seized the cell phone illegally.

Copridge claimed that when he and Pittman met they did not discuss his case but only talked about Fingal's case. Copridge understood that all the evidence pointed to Fingal committing the murder because Pittman told him that he was "gonna walk." Copridge testified that he and Pittman did not discuss evidence relating to Copridge's presence at the crime scene, including Copridge's whereabouts at the time of the murder or any evidence the State had that would place Copridge at the crime scene. Copridge

4

acknowledged Pittman provided him with an audio statement from Fingal that placed Copridge at the scene of the crime, but Copridge said he did not believe it could stand up in court. Copridge also acknowledged Pittman showed him a letter that Fingal was said to have sent to another inmate that implicated Copridge in the murder. Copridge believed that the letter was fake because it misspelled his name and was not written in Fingal's handwriting. Other than Fingal's audio statement and the letter she wrote implicating him, Copridge claimed that Pittman never provided him any discovery or other evidence that connected him to the crimes. Copridge said he wanted to take the case to trial, but Pittman never discussed how they would defend the charges. Copridge reiterated he was told that Pittman would take care of everything and that "he got it in the bag."

When Copridge appeared before the district court on January 14, 2016, Copridge said he thought the case was going to be dismissed because Pittman had expressed confidence and told him that the State had no evidence. Copridge later said he thought there would be a preliminary hearing, but Pittman instead presented him with the plea agreement. Copridge said he did not pay attention to any discussion he had with Pittman regarding the plea agreement before signing it because he was in shock. Copridge testified he did not have an opportunity to read and review the amended complaint before pleading guilty to second-degree murder. But Copridge admitted that the judge read the amended complaint to him, that he understood he was pleading guilty to second-degree murder and not first-degree murder, and that he understood he faced a grid sentence rather than a life sentence. Copridge claimed, however, that he did not understand the difference between the elements of first-degree and second-degree murder and did not understand that he was admitting to robbing and murdering the victim or that he was agreeing to serve a prison sentence of at least 20 years.

Copridge testified that he agreed to plead guilty only because Pittman told him that if he did so, Fingal would be placed on probation and could be home to be with their children. According to Copridge, Pittman told him that pleading guilty was the only way

that Fingal would not go to prison. Copridge said Pittman explained it as a "package deal"; if he and Fingal both pled guilty, Fingal would be granted probation. Copridge said Pittman told him that if things did not work out for Fingal, Copridge could ask the court to withdraw his pleas. Copridge said Pittman failed to advise him that it would be more difficult to withdraw his pleas after sentencing.

When shown a copy of the plea agreement and accompanying documents, Copridge claimed he had never seen them before. But Copridge admitted he told the district court at the plea hearing that he had read, signed, and understood the documents. Copridge agreed that he had been informed of and waived his rights to a preliminary hearing and a trial. Copridge also conceded that he told the district court he had not been forced into entering the plea agreement or promised anything in exchange, that he was satisfied with Pittman's performance, and that the court's recitation of facts and elements of the crimes in the amended complaint was true and correct on each count. Copridge explained that he told the court he was satisfied with Pittman's performance only because he understood that Fingal would be granted probation if he pled guilty. Copridge claimed he told Pittman he wanted to withdraw his pleas, but Pittman told him it was too late because the fact that he had pled guilty was already in the news. Copridge admitted he had prior convictions and had entered a plea in a previous felony case.

*Pittman's testimony*

Pittman testified that he had been an attorney for 16 years and that he often handled homicide cases. Pittman said that sometime after his first meeting with Copridge, he tried to give Copridge 200 to 300 pages of discovery, but Copridge refused to accept it. Pittman recalled that Copridge was interested in filing a motion to suppress evidence and that they had discussed doing so. But Pittman said it ultimately was unnecessary to file a motion to suppress because Copridge decided to plead.

6

Pittman denied promising Copridge that Fingal would get probation if Copridge pled guilty. Pittman said Copridge initially wanted to take responsibility for the murder and enter a plea if Fingal would receive probation. Although Pittman knew that this was not a possibility, Pittman informed the prosecutor about Copridge's desire to have some sort of guarantee or confirmation about what kind of deal the State would offer to Fingal. Pittman said that the prosecutor told him that she could not guarantee the State's offer to Fingal but indicated that she would consider Copridge's position. Pittman claimed that Copridge was unhappy after learning there was no guarantee about Fingal's plea offer and, as a result, told Pittman that he no longer was interested in taking a plea and instead wanted to go to trial. Pittman testified that he later provided Copridge with an audio recording of Fingal making a statement to law enforcement that placed Copridge at the scene of the crime and implicated him as the shooter. Pittman stated that after Copridge heard Fingal's statement, he did not want to go to trial and instead wanted to enter a plea.

Pittman testified that he spoke with Copridge about the strengths and weaknesses of his case. Pittman denied guaranteeing any sort of outcome or telling Copridge that "the case was in the bag" or making any similar statements. Pittman said that he did not coerce Copridge into entering his pleas and testified that he would have tried the case if Copridge had wanted a trial. Pittman testified that before the plea hearing, he and Copridge discussed what would happen at the hearing. Pittman claimed Copridge never expressed any reluctance about proceeding with the plea and was not confused on the day of the plea hearing. Pittman denied that Copridge ever expressed a desire to withdraw his pleas.

After hearing the testimony outlined above and argument from counsel, the district court denied Copridge's motion to withdraw his pleas. Specifically, the court found (1) there was a sufficient factual basis to support Copridge's pleas, (2) there was no evidence to support Copridge's claim that he had been misled by promises of a "package deal" that

7

would grant leniency to Fingal in exchange for his pleas, and (3) Pittman was not ineffective. Copridge timely appeals.

ANALYSIS

Copridge argues the district court erred in denying his motion to withdraw his pleas. Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw a plea absent an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1064-65, 370 P.3d 423 (2016). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Copridge bears the burden of establishing an abuse of discretion. See *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Additionally, this court does not reweigh evidence or assess witness credibility. We give deference to the district court's factual findings so long as those findings are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

K.S.A. 2017 Supp. 22-3210(d)(2) states: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Manifest injustice is defined as something that is "obviously unfair or shocking to the conscience." *State v. Oliver*, 39 Kan. App. 2d 1045, 1048, 186 P.3d 1220 (2008). To determine whether a manifest injustice occurred, courts consider the *Edgar* factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011); see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The *Edgar* factors are "'benchmarks for judicial discretion'" but "should not be relied on to the

8

'exclusion of other factors.'" *Bricker*, 292 Kan. at 245 (quoting *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 [2010]).

Copridge alleges that all three *Edgar* factors exist here; specifically, that (1) his pleas were not fairly or understandingly made because they were not supported by a sufficient factual basis, (2) he was misled and coerced into entering the pleas based on his belief that his pleas were part of a package deal that would result in leniency for Fingal, and (3) Pittman provided ineffective representation. We address each of these allegations in turn.

1. *Factual basis for Copridge's pleas*

K.S.A. 2017 Supp. 22-3210(a)(4) states that a guilty plea may be accepted when "the court is satisfied that there is a factual basis for the plea." This statute "requires a trial court to establish that all elements of the crime charged are present before accepting a defendant's plea." *State v. Ebaben*, 294 Kan. 807, 812, 281 P.3d 129 (2012). Mere recitation of the elements of the crime is insufficient. Evidence must demonstrate how the defendant's conduct fell within the elements of the crime charged. See 294 Kan. at 815-16. Whether the evidence is sufficient to establish the elements of the crime is within the discretion of the court. *Edgar*, 281 Kan. at 44.

A factual basis of a plea may be established in any one of three ways:

"(1) by a complaint or information given or read to the defendant which sets forth the factual details and essential elements of the particular crime charged; (2) by the prosecutor or defendant's factual statement presented to the court at the plea hearing; or (3) based on the evidence presented at a preliminary hearing at which the same judge presided." *Ebaben*, 294 Kan. at 813.

9

A failure to comply with the requirements of K.S.A. 2017 Supp. 22-3210 may be good cause for granting a motion to withdraw a plea if the noncompliance results in the defendant not understanding the nature of the charge or the consequences of entering the plea. *Edgar*, 281 Kan. at 38. If a review of the entire record establishes the plea was knowingly and voluntarily made, however, failure to strictly comply with K.S.A. 2017 Supp. 22-3210 is harmless error. See *Trotter v. State*, 218 Kan. 266, 269, 543 P.2d 1023 (1975).

At the plea hearing, Pittman acknowledged receipt of the amended complaint that set forth Copridge's crimes as alleged by the State. Following the plea colloquy between the district court and Copridge, the judge read from the amended complaint:

"THE COURT:  All right. I'm going to recite to you the facts alleged. I want you to listen carefully and tell me whether or not each and every fact and element as I recite is true and accurate. With regard to count one, murder in the second degree, that in Sedgwick County, the State of Kansas, on or about the 8th day of August, 2015, you, Isaiah Copridge, did then and there, unlawfully and intentionally, kill a human being, Rayan Baba, by inflicting injuries from which Rayan Baba did die on the 8th day of August, 2015. Is each and every fact and element as I recited true and accurate?

"[COPRIDGE]:  Yes, sir.

"THE COURT:  With regard to count two, aggravated robbery, that in Sedgwick County, the State of Kansas, on or about the 8th day of August, 2015, you, Isaiah Copridge, did then and there, unlawfully and knowingly take property, specifically an iPhone, from the person or presence of another individual, Rayan Baba, by force or threat of bodily harm to that person, Rayan Baba, while you were armed with a dangerous weapon, specifically armed with a handgun. Is each and every fact and element as I recited true and accurate?

"[COPRIDGE]:  Yes, sir.

"THE COURT:  Is the State satisfied with the factual basis?

"[THE PROSECUTOR]:  State is, Your Honor."

In denying Copridge's motion to withdraw his pleas, the district court held that this recitation of the amended complaint, combined with Copridge's sworn affirmation that each and every fact and element was true and accurate, constituted a sufficient factual basis for Copridge's pleas.

Copridge argues that the district court's reading of the amended complaint failed to set forth an adequate factual basis for his pleas. To that end, Copridge asserts that the court merely recited the elements of the crimes and only provided minimal factual details.

Copridge pled guilty to second-degree murder, which requires proof that (1) Copridge intentionally killed a human being and (2) that the act occurred on a specific date and in a particular county. See K.S.A. 2017 Supp. 21-5403(a)(1); PIK Crim. 4th 54.140 (2014 Supp.). The district court's factual basis included these two elements and also named the victim, stated that the victim died from injuries inflicted by Copridge, and stated that the victim's death occurred on the same day that Copridge inflicted the injuries to the victim. In addition, Copridge pled guilty to aggravated robbery, which requires proof that (1) Copridge knowingly took property from the person or presence of another, (2) the taking was by force or threat of bodily harm, (3) Copridge was armed with a deadly weapon or inflicted bodily harm on a person in the course of such conduct, and (4) the act occurred on a specific date and in a particular county. See K.S.A. 2017 Supp. 21-5420(b); PIK Crim. 4th 54.410 (2017 Supp.). The district court's factual basis included these elements and also identified the property taken as an iPhone, identified the victim by name, and identified the weapon as a handgun.

The purpose of the factual basis requirement "is to ensure that a plea was knowingly and voluntarily entered, and that purpose is defeated when there is no evidence presented to the district court showing that the defendant's conduct falls within the charge to which the defendant pleaded." *Ebaben*, 294 Kan. at 815. Here, the district court's recitation of the amended complaint provided a sufficient factual basis for

11

Copridge's guilty pleas. While not overly detailed, it provided specific evidence that Copridge's conduct fell within the charges to which he pled. Copridge, who was under oath, agreed that each and every fact and element recited by the district court was true and accurate. Under these circumstances, the district court did not abuse its discretion in concluding that there was a sufficient factual basis to support Copridge's guilty pleas.

2. *Package deal*

Copridge argues he was misled and coerced into entering his guilty pleas because he did so as part of a package deal that ensured Fingal would be granted probation. In support of this argument, Copridge claims his pleas were involuntary either because the district court was not informed about the package deal or because he was misled into believing that such a deal existed.

In discussing package deal plea agreements, our Supreme Court has held:

> "'Package deal' plea agreements, pursuant to which leniency to a third party or disposition of a case or cases in which a third party is a defendant is a part of the plea agreement, are not per se invalid, but the trial court should be informed of the package deal in order that the court may make appropriate inquiry relative thereto in determining the voluntariness of the plea." *State v. Bey*, 270 Kan. 544, Syl. ¶ 4, 17 P.3d 322 (2001).

In denying Copridge's motion to withdraw his pleas, the district court found no evidence of a package deal, other than Copridge's testimony. The court went on to find that Copridge's testimony was not credible. Copridge argues the district court's finding in this regard is flawed because Pittman admitted the State had agreed to consider Copridge's pleas and desire for Fingal to be placed on probation.

But Pittman's testimony does not constitute evidence of a package deal. At most, this testimony suggests that the State would consider Copridge's desire for Fingal to be

12

granted probation. This testimony falls far short of proof of a package deal guaranteeing that Fingal would receive a specific sentence in exchange for Copridge's pleas. Nothing in Copridge's written plea agreement referenced Fingal's case. Nor did Copridge present any documentation of Fingal's agreement with the State or any other evidence suggesting that her sentence would be influenced by Copridge's pleas. Contrary to Copridge's argument, Pittman's testimony reflected that Copridge first wanted to plead guilty if it could help Fingal. But when the State refused to provide any guarantee about Fingal's sentence, Pittman claimed that Copridge wanted to go to trial. According to Pittman, Copridge later changed his mind and decided to plead guilty after he was provided with Fingal's audio statement and her letter implicating him as the shooter. These facts are supported by Copridge's statements at the plea hearing, where he specifically told the court that he was not forced, threatened, or promised anything in exchange for his pleas. The district court's findings that there was no package deal and that Copridge was not misled or coerced into entering his pleas based on his belief that such a deal existed are supported by substantial competent evidence. As a result, the district court did not abuse its discretion in denying Copridge relief on this basis.

3. *Ineffective assistance of counsel*

Copridge argues the district court should have permitted him to withdraw his pleas because Pittman's representation was ineffective.

Our Supreme Court has summarized a criminal defendant's burden to show ineffective assistance of counsel in a situation like this:

> "A postsentence motion to withdraw plea under K.S.A. 22-3210(d) that alleges ineffective assistance of counsel . . . must meet the constitutional standards articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), to demonstrate manifest injustice. The defendant must show that counsel's performance fell below the standard of reasonableness and that there

13

was a reasonable probability that, but for counsel's errors, the defendant would not have entered the plea and would have insisted on going to trial." *Bricker*, 292 Kan. 239, Syl. ¶ 5.

Under the first prong of the *Strickland* standard, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. 292 Kan. 239, Syl. ¶ 6; see *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the second prong, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

Copridge claims Pittman was ineffective for the following reasons: (1) Pittman did not provide him any discovery or discuss whether the State had evidence placing Copridge at the crime scene, (2) Pittman did not investigate or file a motion to suppress evidence discovered on the cell phone seized from Copridge's brother's car, and (3) Pittman never discussed potential defenses and only told Copridge that "he was going to walk." Copridge alleges that, but for Pittman's errors, he would not have entered guilty pleas and would have gone to trial.

The district court judge rejected Copridge's ineffective assistance of counsel argument: "Mr. Pittman in every way met the standards of competent, well above and beyond that, competent counsel in advising his client. And even if there were something, which I don't find, I find that the defendant would have entered this plea instead of going to trial."

For an attorney to provide effective assistance of counsel to a criminal defendant who enters a guilty plea, that attorney "'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" See *State v. Orr*, 262 Kan. 312, 327, 940 P.2d 42 (1997). Copridge's claims that Pittman was

14

ineffective in failing to investigate or discuss the case with him lack support in the record. Pittman testified that he attempted to deliver 200 to 300 pages of discovery to Copridge, but Copridge refused to accept it. Pittman and Copridge testified that Copridge received a copy of the probable cause affidavit, a letter allegedly written by Fingal that referred to Copridge as a murderer, and Fingal's audio statement that implicated Copridge as the shooter. Pittman testified that he and Copridge discussed the strengths and weaknesses of the State's case. Copridge also testified that Pittman told him that all of the State's evidence pointed to Fingal. Pittman and Copridge both testified that they discussed the cell phone suppression issue. Copridge admitted that he had no proof that the seizure of the phone was improper. Pittman testified that there was no need to file a motion to suppress after Copridge entered his pleas. Pittman testified that he would have taken the case to trial if Copridge had wanted to go to trial. Pittman denied telling Copridge that he had the case beat or guaranteeing any sort of outcome.

Copridge's ineffective assistance of counsel arguments are essentially an invitation to reweigh the evidence and find his testimony more credible than that of Pittman, which we cannot do. See *Anderson*, 291 Kan. at 855 (appellate court does not reweigh evidence or assess witness credibility). Copridge has failed to show that Pittman's performance fell below the constitutional standard of reasonableness. See *Bricker*, 292 Kan. 239, Syl. ¶ 5. Copridge's ineffective assistance of counsel claim necessarily fails.

CONCLUSION

Copridge has not established manifest injustice that requires his pleas be set aside. The record reflects that Copridge's guilty pleas were supported by a sufficient factual basis, that he was not misled or coerced into entering his pleas, and that he was represented by competent counsel. The district court did not abuse its discretion in denying Copridge's motion to withdraw his pleas.

Affirmed.

15