NOT DESIGNATED FOR PUBLICATION

Nos. 128,744
128,789

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEROME EVERT GRIFFIN SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Chad Josiah Cook*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.


PER CURIAM: Jerome Evert Griffin Sr. a pro se litigant, pleaded guilty to one count of eluding an officer and one count of driving under the influence (DUI). He filed a departure motion, seeking probation in lieu of prison time, which the court denied. Six days after sentencing, Griffin moved to withdraw his plea. The court summarily denied that motion, and Griffin now appeals. Finding Griffin fails to demonstrate that manifest injustice would result from denial of his request, we affirm the district court's decision.

1

FACTUAL AND PROCEDURAL BACKGROUND

While Griffin was on probation in case No. 2023CR173 (Case 1), the State charged Griffin in case No. 2024CR854 (Case 2) with attempted aggravated battery of an officer; fleeing or attempting to elude; attempted interference with an officer; DUI; transporting an open container; driving on a suspended or revoked license; and two other traffic violations. In Case 1, Griffin faced allegations that he violated the conditions of his probation. The district court appointed Griffin the same counsel in both cases.

In Case 2, Griffin filed multiple pro se motions, seeking discovery, dismissal, and subpoenas. He also filed a pro se motion seeking to represent himself with the aid of standby counsel.

The district court held a hearing on Griffin's self-representation motion. During the hearing, Griffin clarified he only sought standby counsel in Case 2, stating, "[O]nce I get this [case] cleared up, I'll worry about that . . . other one." The court then began its detailed colloquy with Griffin to ensure he was voluntarily and intelligently waiving his right to counsel. The court inquired if Griffin was under the influence of any medications or substances, to which he responded that he took blood pressure medicine but affirmed his mind was "clear" at the hearing.

The court continued with a detailed colloquy regarding Griffin's right to counsel and the attendant difficulties and disadvantages to unrepresented litigants. To each question, Griffin responded by confirming his understanding. The court explained, in detail, that if it allowed him to represent himself, Griffin could change his mind and get new appointed counsel or retain his own representation and reminded Griffin that he would be expected to follow all legal rules and could not later claim his lack of legal knowledge as a basis for a new trial. Griffin expressed his understanding. The court asked

2

Griffin if he had any physical problems that might hinder his ability to represent himself, to which Griffin said, "No, sir."

The court methodically inquired whether Griffin understood the charges against him, going charge by charge. Griffin stated his understanding. The court went through the maximum sentences for the charges Griffin faced, and Griffin affirmed he understood the maximum penalties and fines.

The court then asked Griffin if he wanted to represent himself. Griffin responded affirmatively. The court then asked if Griffin wanted standby counsel. Griffin again responded affirmatively. The court then explained the boundaries of standby counsel's assistance and what Griffin would be required to do as his own counsel. Griffin agreed he understood. The court then found Griffin made a knowing and intelligent waiver of his right to counsel and the decision to represent himself.

> "THE [JUDGE]: . . . I will then find that you've been advised of your right to counsel; you've been advised of the advantages of having counsel; you've been advised of the disadvantages and dangers of proceeding without counsel; you understand the nature of the charges against you and the possible consequences; and you've indicated to the Court that you do not want to have court-appointed counsel to represent you.
>
> "MR. GRIFFIN: Yes, sir.
>
> "THE [JUDGE]: Based on that, I will find that you—I will find that you are making a knowing and intelligent waiver of your right to counsel and knowing and intelligent decision to represent yourself."

The court appointed standby counsel, who represented Griffin in both cases.

On December 18, 2024, Griffin entered into a plea agreement with the State in which he pleaded guilty to one count of fleeing or attempting to elude law enforcement and one count of DUI. The agreement included Griffin's handwritten acknowledgement

3

that, in exchange for his plea, the State would dismiss the remaining charges and Griffin would be free to argue for probation instead of prison in Case 2.

The next day, the court held a combined preliminary hearing in Case 2 and revocation hearing in Case 1 at the same time. The court indicated its understanding that the parties had reached an agreement and the hearing proceeded on the plea agreement. The court first asked Griffin if he was representing himself regarding the plea, and Griffin said he was. The court then advised Griffin of his right to a preliminary hearing and said he would need to waive this right to proceed with his plea. Griffin affirmed his understanding and waived his right to a preliminary hearing. The State also waived the right to the hearing and put on the record that it provided Griffin with the video discovery he had sought earlier in the matter. The court accepted the waivers.

The court asked if Griffin wished to enter pleas of not guilty to the charges for the time being so that it could proceed to the proposed plea. Griffin responded that he did not. The court asked for clarification and Griffin had a brief discussion with standby counsel, after which he changed his answer to "Yes, sir." The court then questioned Griffin on his state of mind and background, including asking Griffin whether he was under the influence of any medications or substances. Griffin indicated he was on blood pressure medication and pain relievers for his arthritis, but he confirmed those medications did not impact his ability to understand the proceedings and that his mind was clear.

The court then asked questions to gauge Griffin's understanding of the charges against him and his right to proceed to a jury trial and have the State bear the burden of proving his guilt beyond a reasonable doubt. The court also questioned Griffin on his understanding of the trial rights he would be waiving by pleading. Griffin affirmed his understanding of every query.

4

The court then engaged in the following exchange about Griffin's self-representation:

> "THE [JUDGE]:  And I guess I just want to make it clear. I know you're representing yourself. You understand that anytime you could, obviously, ask—you could have asked the Court for court-appointed counsel—
> "THE DEFENDANT:  Yes, sir.
> "THE COURT:  —to represent you if you decided to change your mind?
> "THE DEFENDANT:  Yes, sir.
> "THE COURT:  And at this point you're still representing yourself?
> "THE DEFENDANT:  Yes, sir."

Griffin then said he did not have any questions about any of the rights discussed by the court and indicated his desire to enter a plea.

The State then presented the plea agreement to the court—Griffin would plead guilty to Counts II and IV, eluding an officer (a severity level 9 person felony) and DUI, first (a class B misdemeanor), respectively, with the sentences to run concurrently. Griffin confirmed that the State's recitation of the agreement matched his understanding and he had no questions about the agreement. When asked whether he understood that the court was not bound by the parties' agreements about probation or sentencing, Griffin orally confirmed he understood.

The court then asked if anyone had threatened or pressured Griffin or promised anything to secure his plea. Griffin responded, "No, sir" to both queries. When asked if he had enough time to consider the plea and decide it was in his best interests, Griffin replied, "Yes, sir." Griffin agreed he had standby counsel to help fill out the plea agreement but affirmed he read through it before signing the document. The court then asked Griffin if there was anything in the agreement he did not understand or that he needed more explanation about, and Griffin replied no to both questions.

5

Griffin agreed when the court recited his A criminal history score, and the court then discussed the potential maximum penalties for Counts II and IV in Case 2 and indicated his sentence would run consecutive to the one imposed in Case 1. Griffin stated his understanding. He confirmed he had no complaints about how "the courts" treated him.

Griffin then pleaded guilty to Counts II and IV, and the State provided the factual basis for each charge. The court then asked Griffin if he had a chance to review the discovery and if he agreed with the State's recitation of the facts. Griffin responded, "Yes, sir." The district judge then accepted Griffin's plea:

> "Based on what the Court has heard, the Court will find the defendant has freely, knowingly, and voluntarily waived his constitutional rights and entered his plea; that there's a factual basis for those pleas; that he understands the nature of the charges and the consequences of his plea. And I will make a finding he's, in fact, guilty of Count II, fleeing or attempting to elude a police officer, a Severity Level 9 person felony; and Count IV, driving under the influence of alcohol, a Class B nonperson misdemeanor.
> "Pursuant to plea, I will dismiss Counts I, Count III, Count V, Count VI, Count VII, and Count VIII."

The court then switched to Case 1, addressing counsel since Griffin was still represented in that case. Counsel agreed that Griffin was stipulating to violating his probation. The court then addressed Griffin directly, asking him if he understood that he did not have to stipulate but could require the State to prove the violation. Griffin affirmed his understanding and indicated his desire to stipulate, after which the court found he violated the conditions of his probation.

The court then addressed the parties regarding a bond, to which Griffin explained why he needed a bond reduction or an own recognizance (OR) bond:

6

"I would like a reduction in bond or an OR bond or court-release bond so I can go home and take care of my wife. She had a stroke. This—all of this has been in response to that.

"We've lost so many in nursing homes, and we lost in rehab and the one across the street from KU, and she's terrified of being sent there. And I would also ask if I can get released, that would give me time to pay off my probation fee that's left in [Case 1]. And if any other thing I need to do and maybe check into a MIRRORS if I can make sure that I have someone there to take care of her because I don't know how long Treesha's (phonetic) going to stay there with her. But give me time to take—get some help so I can take and do some things and take care of her because I'm really afraid of leaving her alone by herself. The doctors have said she's developed dementia. I don't know how that happens after stroke, but I—I haven't had a chance to review it and understand it, but that's what I would ask the Court to grant me if possible, please."

After hearing the State's objection, the court reduced the bond in both cases but denied an OR bond. The court advised Griffin that he needed to "file an appropriate motion" because Griffin planned to ask for probation. Before sentencing, Griffin did move for a durational departure and filed an amended motion seeking a dispositional departure.

On January 17, 2025, the district court held a combined sentencing hearing in Case 2 and disposition hearing in Case 1. The State and Griffin said they had no changes or corrections to the presentence investigation report. Griffin did not challenge the finding that his criminal history score was A.

In Case 2, the court then explained that Griffin faced presumptive prison with a sentencing range of 15 to 17 months for Count II. The court then permitted Griffin to speak on his own behalf as well as argue his departure motion.

During his statement, Griffin discussed the deaths of his son and his wife's son, as well as the stroke his wife suffered during the losses. Griffin said he had been struggling

7

and explained the issues facing his wife in her rehabilitation. Despite his statements, the State opposed probation and sought a 16-month prison sentence on Count II.

Griffin's daughter spoke at the hearing, corroborating Griffin's statements about his wife's health struggles and the deaths the family suffered in a short amount of time. Griffin's counsel in Case 1 argued for continued probation in that case, and as standby counsel on Case 2 reinforced Griffin's understanding that he needed help and was accessing the resources available to him.

The court acknowledged the tragedy Griffin had suffered in his family, but noted the dangerousness of Griffin's crime, which included driving over 100 m.p.h. and weaving in and out of traffic while intoxicated. The court denied Griffin's departure motion and sentenced him to 16 months of imprisonment on Count II with 12 months of postrelease supervision. The court sentenced Griffin to 6 months in jail on Count IV, to run concurrent with his sentence on Count II, noting that Griffin already had about 6 months of time served toward his 16-month sentence. After reminding the parties that this was Griffin's second violation of probation in Case 1, which included prior sanctions on the earlier violation, the court revoked Griffin's probation in Case 1 and imposed the underlying 12-month prison sentence.

About one week after sentencing, Griffin filed a pro se motion to withdraw his plea and correct an illegal sentence. Soon thereafter, he filed a memorandum in support and a supplemental filing. In his filings, Griffin stated he entered the plea when he "was stressed and worried about his wife." He also denied driving at 100 m.p.h. and other aspects of the State's allegations against him and alleged jurisdictional flaws in law enforcement's actions. Griffin maintained it would be manifest injustice to sentence him "to an illegal sentence for incidents that did not happen . . . ." He also alleged that his concern about his wife prevented him from thinking clearly. Finally, he said that "it would have served the community, family and defendant to have considered in house

8

treatment . . . ." His supplemental filings included allegations that the Bonner Springs Police Department tampered with evidence, and he asked the court to view video footage he asserted demonstrated his innocence. Griffin concluded that "it is more likely tha[n] not that no reasonable juror would have convicted" him.

The district court summarily denied Griffin's motion. It recited the procedural history and the allegations made in Griffin's pro se filings, and cited caselaw indicating "[a] hearing on a motion to withdraw a plea of guilty or nolo contendere is limited to those instances in which the defendant's motion raises substantial issues of fact or law . . . ." It acknowledged K.S.A. 22-3210(d)(2) as authority to grant a timely postsentence withdrawal motion and explained the *Edgar* factors it must use to consider Griffin's motion to withdraw his pleas. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The court noted that Griffin's filings failed to identify any of the *Edgar* factors and found that incompetent counsel was not an issue since Griffin had elected to represent himself.

Focusing on Griffin's claims of manifest injustice regarding evidence and his claims of innocence, the court found Griffin had access to the evidence before entering his plea and that he could not now rely on the evidence to assert he did not make "his plea fairly and understandingly or that he was misled or coerced into making his plea." The court also found that the record established Griffin waived his right to a preliminary hearing after verbalizing his understanding that the preliminary hearing required the State to show probable cause that Griffin committed the crimes charged.

The court next addressed the plea hearing, finding the court advised Griffin of his rights. The court then detailed the acknowledgements and understanding Griffin expressed during the plea hearing. The court found that it had outlined the charges and maximum penalties Griffin faced and quoted the State's factual basis from the hearing, and that Griffin agreed to the State's recitation. The district court concluded by stating

9

that Griffin "failed to show that he was forced to accept the plea in this case. He understood what crimes he was pleading to and . . . he agreed he did commit those crimes based on the [S]tate's factual basis." The district court ultimately denied Griffin's motion to withdraw his guilty plea.

Griffin timely filed two separate appeals—one on the denial of his motion to withdraw plea and the other challenging his sentence. His two appeals were consolidated for consideration.

ANALYSIS

On appeal, Griffin claims only that the district court erred in summarily denying his motion to withdraw plea. Because he does not challenge his sentence otherwise, we consider only the issue of plea withdrawal. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (Issues not adequately briefed are deemed waived or abandoned.).

In his filings before the district court, Griffin cited K.S.A. 60-1507 and used the phrase "illegal sentence," but his motion is properly construed as a plea withdrawal motion. The contents of his appellate brief support this construal, as he makes no allegations that his sentence is illegal or that he is relying on K.S.A. 60-1507.

We review a district court's summary denial of a plea withdrawal motion de novo. *State v. Espinoza*, 319 Kan. 653, 658, 556 P.3d 882 (2024) (citing *State v. Smith*, 315 Kan. 124, 126, 505 P.3d 350 [2022]).

"After sentencing, a court may consider a motion to withdraw a plea 'to correct manifest injustice' if the motion is filed within one year of the final order of the last appellate court to exercise jurisdiction on direct appeal. K.S.A. 22-3210(d)." *Espinoza*, 319 Kan. at 654. Courts consider three factors—referred to as the *Edgar* factors—in

10

determining whether a movant has established manifest injustice. *Espinoza,* 319 Kan. at 658-59. Those factors are:

> """(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made."' *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018) (quoting *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 [2014])." *Espinoza,* 319 Kan. at 658-59.

The *Edgar* factors are not exclusive—rather, they provide "'viable benchmarks for judicial discretion.'" *State v. Morris*, 298 Kan. 1091, 1101, 319 P.3d 539 (2014) (quoting *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 [2011]).

On appeal, Griffin argues he was "experiencing intense mental and emotional distress regarding his ailing wife's condition and lack of adequate care" that affected his ability to fairly and understandingly enter his plea. As support, he cites his efforts to seek an OR bond to care for his wife and his attempt to secure a departure to probation for the same reason. Griffin's departure motion, as well as his statements at sentencing, outlined the losses suffered by his family and his efforts to care for his wife. Griffin also references his many assertions of innocence during the criminal proceedings, which he maintains indicate he lacked the "right state of mind to plead guilty fairly and understandingly."

Griffin does not claim manifest injustice based on the first or second *Edgar* factor, so we need not analyze them when considering his motion. See *State v. Adams*, 311 Kan. 569, 578-79, 465 P.3d 176 (2020) (not addressing ineffective counsel factor regarding defendant's pro se representation because he did not make any arguments about his own representation); *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (an issue not briefed is waived or abandoned); *State v. Oliver*, 39 Kan. App. 2d 1045, 1048, 186 P.3d 1220 (2008) (same, in the plea withdrawal context). He acknowledges that our appellate

courts have used the third *Edgar* factor—whether the plea was fairly and understandingly made—to examine whether a person's mental state resulted in an improper plea. He also maintains the mental and emotional stress he faced could be analyzed as a distinct factor.

In *State v. Newman*, 311 Kan. 155, 159-60, 457 P.3d 923 (2020), the defendant appealed the district court's denial of his presentence plea withdrawal motion by arguing "the stress and pressure caused by his mother's health condition and pressure from his attorney to plead guilty 'combined to overwhelm him' and rendered his plea involuntary." The district court disagreed, finding the defendant had an extensive plea hearing during which the court ensured the defendant was thinking clearly and understood the proceedings. The defendant in *Newman* did not mention any tension stemming from his mother's health issues and nothing in the record indicates he presented as nervous, tense, or upset during the plea hearing. On appeal, the Kansas Supreme Court found the defendant failed to provide any authority showing the district court abused its discretion in denying his presentence motion. 311 Kan. at 159-60.

Similarly, here, Griffin said nothing at the plea hearing to indicate he was stressed, under unusual pressure, or otherwise not thinking clearly. The only reference he made to his wife's health situation was when he asked the court for an OR bond so he could care for her, saying, "This—all of this has been in response to that." The district court engaged in a comprehensive colloquy with Griffin to ensure that he fairly and understandingly entered his plea. See *Morris*, 298 Kan. at 1103 (detailed colloquy helped establish support for district court's denial of plea withdrawal motion). There is no evidence Griffin was more stressed than any other criminal defendant in his position or upset at the hearing, and he answered all the district court's inquiries in a manner indicating he understood the nature of the charges and the proceedings.

We compare Griffin's situation to that examined by our Supreme Court in *Adams*, 311 Kan. at 575-77. There, the district court summarily denied a plea withdrawal motion

12

when the defendant challenged whether his plea was knowingly and voluntarily made based on his mental status. Notably, the *Adams* defendant also represented himself in the proceedings before the district court. When reviewing the denial, the Kansas Supreme Court agreed with the district court's reasoning that an evidentiary hearing would not have changed the outcome because it was convinced the record conclusively showed the defendant was not entitled to relief. In supporting the district court's reasoning, the Supreme Court detailed the evidence of Adam's participation in the proceedings:

> "The district court here did not deny that Adams had the diagnosis he claimed to have, but rather found that such a diagnosis could not contradict the long and established history of Adams being thoughtfully and sensibly engaged. This is supported by the record, where we see repeated interactions with the court where Adams was focused, able to understand what the court was saying, able to comprehend the nature of the proceedings, able to process information, and able to make intelligent and rational decisions with the benefit of that information.
>
> "From the point Adams requested to represent himself all the way through sentencing, he demonstrated repeatedly that he was aware of all his actions and was conducting his defense in a rational manner. . . .
>
> "The district court was validly concerned about Adams' initial decision to proceed pro se, and the record shows the effort it made to confirm that Adams fully understood the proceedings and was thoughtfully engaged at every step. Adams himself confirmed that he had no concerns about his treatment by the State or the court. The court even went so far as to specifically address Adams' medications and to confirm that Adams was satisfied he was of the state of mind to fully understand and appreciate the seriousness of the proceedings; Adams assured the court he knew of no reason the court should refuse to accept the plea." 311 Kan. at 576-77.

Noting that it is a "high bar" to have a postsentence plea withdrawal motion granted, the Supreme Court found that "[t]he district court properly concluded that there was no manifest injustice because even if Adams had been allowed to present evidence regarding his previous mental health status, that diagnosis is not dispositive and the overall record would still conclusively show he is entitled to no relief." 311 Kan. at 577.

13

As in *Adams*, here the district court took great pains to ensure Griffin understood not only the nature of the charges against him and the terms of the plea, but from the outset, engaged in detailed questioning to ensure Griffin understood the pitfalls of representing himself. The court allowed Griffin an opportunity to ask questions, discuss things with his standby counsel, or express any confusion or reason why entering a plea was not what he wanted. Further, the record indicates Griffin was continuously engaged in the proceedings, repeatedly confirmed his understanding, and made intelligent and rational decisions like the defendant in *Adams*. Finally, the district court asked Griffin specifically about medications, physical reasons, and anything that would result in an unclear mental state, and Griffin unequivocally confirmed his mind was clear at the plea hearing.

Griffin's departure motion referenced his wife's ailing health and the tragedies faced by his family, including the losses of two children, so these issues were known to all parties. At the sentencing hearing, which occurred just one month after the plea hearing, Griffin discussed the deaths of his son and his wife's son, as well as the stroke his wife suffered during the losses. Griffin also disclosed that he had been struggling and explained the issues facing his wife in her rehabilitation. Despite these statements made in the context of Griffin seeking a departure to probation, he at no time indicated any regret about entering the plea agreement. Griffin's own appellate brief notes that "[a]s soon as the district court sentenced him to prison rather than probation, [Griffin] moved to withdraw his plea." All of this indicates Griffin is merely unhappy that he did not receive the departure to probation, and that if he had, he would be unlikely to seek to withdraw his plea.

While we certainly have sympathy for Griffin's family situation, his conclusory statements that his mental and emotional stress should invalidate his plea are simply not supported by the record. "'[M]ere conclusions . . . are not sufficient to raise a substantial issue of fact when no factual basis is alleged or appears from the record.'" *Adam*s, 311

Kan. at 574 (quoting *Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 [1994]). Accordingly, we find Griffin has not borne his burden to establish the district court erred in summarily denying his postsentence plea withdrawal motion.

Affirmed.