NOT DESIGNATED FOR PUBLICATION

No. 126,076

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDDIE L. CADDELL,
*Appellant*,

V.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Submitted without oral argument. Opinion filed April 19, 2024. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Eddie Lee Caddell III appeals the district court's summary denial of his K.S.A. 60-1507 motion. He contends he received ineffective assistance from the lawyer who represented him in negotiating a plea agreement and at sentencing. After our review of the record and consideration of Caddell's arguments, we affirm the district court's summary dismissal of his motion.

1

Caddell was charged with rape and aggravated indecent liberties with a child in one case and aggravated criminal sodomy in a separate case. Preliminary hearings were held in each case.

Five days before trial, the parties entered into a plea agreement in which Caddell pleaded guilty to rape in the first case, while the aggravated indecent liberties charge was dismissed. Because the female victim was less than 14 years old and Caddell was over 18 years of age, his presumptive sentence for the rape charge was life in prison without the possibility parole for 25 years. Under the plea agreement, the State agreed not to oppose a durational departure from the off-grid life sentence to a grid sentence of 240 months—the low number for a severity level 1 person felony for a criminal history D.

The second case, involving an adult male victim, the aggravated criminal sodomy charge was reduced to attempted aggravated sexual battery. In exchange for Caddell's guilty pleas, State agreed to recommend 26 months in prison, consecutive to the rape sentence. Caddell was free to, and did, argue for additional departures and for a lesser sentence.

In the end, the district court granted the durational departure to the grid sentence as set forth in the plea agreement and otherwise followed the sentencing recommendation by the State. Caddell was sentenced to a controlling sentence of 266 months' imprisonment with lifetime postrelease supervision. Caddell timely appealed, contending the district court misapplied the relevant sentencing statutes.

In his direct appeal, Caddell challenged his sentence, contending the trial court erred by imposing a grid sentence using his actual criminal-history score D rather than I. See *State v. Caddell*, No. 115,907, 2017 WL 3948417 (Kan. App. 2017) (unpublished

opinion). He argued "a Kansas sentencing statute governing multiple-conviction cases required the district court to disregard his actual criminal-history score and sentence him on his most-serious offense—rape—as if he had no criminal history." 2017 WL 3948417, at *1. This court disagreed and concluded that the statute at issue, K.S.A. 2016 Supp. 21-6810(a), "applies only when separate charges are made in a single criminal complaint or are joined for trial because they could have been brought in the same complaint." 2017 WL 3948417, at *1. Because Caddell's charges were filed separately, merely being consolidated for plea purposes and not for trial, our court held that the district court needed to consider his full criminal-history score in each case, did not err, and affirmed Caddell's sentence. 2017 WL 3948417, at *1.

Caddell then timely filed a K.S.A. 60-1507 motion, alleging ineffective assistance of counsel. See *Caddell v. State*, No. 123,168, 2021 WL 5990104, at *2 (Kan. App. 2021) (unpublished opinion). Part of the relief sought by Caddell was that he be allowed to withdraw his guilty pleas. The district court summarily dismissed the motion, interpreting K.SA. 60-1507(e) as requiring Caddell to seek to withdraw his pleas before he could seek relief under K.S.A. 60-1507. Caddell's appeal of that ruling resulted in our court holding that "[t]he exclusive remedy requirements of K.S.A. 2020 Supp. 60-1507(e) did not obligate Caddell to file a motion to withdraw his pleas before seeking relief through a habeas corpus motion." 2021 WL 5990104, at *2. It thus reversed and remanded the case to the district court with directions to consider Caddell's motion under K.S.A. 2020 Supp. 60-1507(b). 2021 WL 5990104, at *2.

On remand, the district court again summarily denied Caddell's K.S.A. 60-1507 motion. It concluded that even if Caddell could establish that his counsel was deficient, he failed to establish a reasonable probability of success but for that deficiency. This appeal followed.

3

ANALYSIS

*Standard of Review*

A district court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020).

When the district court summarily dismisses a K.S.A. 60-1507 motion, as happened here, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022).

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to effective assistance of counsel. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). Caddell contends his counsel was constitutionally ineffective by (1) failing to conduct a proper investigation before the plea agreement was entered; (2) persuading Caddell to accept the plea agreement based on counsel's legal mistake that Caddell would receive a sentence based on criminal history I rather than D; and (3) failing to investigate and present additional mitigation factors at sentencing.

4

When a defendant alleges ineffective assistance of counsel pursuant to K.S.A. 60-1507, the district court shall hold an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2023 Supp. 60-1507(b); Supreme Court Rule 183(f) and (g) (2024 Kan. S. Ct. R. at 241). "'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales*, 300 Kan. at 881; see also *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

This court strongly presumes that defense counsel's conduct fell within the wide range of reasonable professional assistance, meaning a defendant must overcome the strong presumption that appellate counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 527, 486 P.3d 1216 (2021). Strategic choices made by counsel after a thorough investigation of the law and relevant facts are virtually unchallengeable. Strategic choices made after an incomplete investigation, however, fall within the wide range of reasonable professional assistance only if the decision to limit the investigation was supported by reasonable professional judgment. *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021). The decision to plead guilty is not a strategic decision by counsel—that decision belongs to and is ultimately made by the defendant. See *State v. Bricker*, 292 Kan. 239, 252, 252 P.3d 118 (2011) (citing *State v. Carter*, 270 Kan. 426, 441, 14 P.3d 1138 [2000]); *State v. Reyes*, No. 121,589, 2021 WL 520667, at *3 (Kan. App. 2021) (unpublished opinion).

As the movant for habeas relief, Caddell bears the burden of establishing entitlement to an evidentiary hearing. Supreme Court Rule 183(g) (2024 Kan. S. Ct. R. at 241) (preponderance burden). To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan.

5

74, 80, 444 P.3d 927 (2019). If this burden is met, the district court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales*, 300 Kan. at 881.

Claims of ineffective assistance of trial counsel are analyzed under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). A movant must first show that counsel's performance was deficient—that it fell below an objective standard of reasonableness. If a defendant successfully shows deficient performance, the analysis moves to the second part of the *Strickland* test—the movant must also show there is a reasonable probability that, absent defense counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 315 Kan. at 217-18. Under the second part of the *Strickland* test, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

Judicial scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. An appellate court should instead reconstruct the circumstances of the challenged conduct and evaluate the conduct from counsel's perspective. 315 Kan. at 218. A strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. *Khalil-Alsalaami*, 313 Kan. at 486.

6

*Caddell's pre-plea claims are conclusory or refuted by the record.*

Caddell contends his trial counsel provided ineffective assistance *before* he entered his guilty pleas by failing to request an independent psychological examination of the complaining witness and failing to hire a SANE/SART expert—someone certified in performing sexual assault examinations—or a private investigator to investigate the case. Caddell contends an evidentiary hearing is required to determine "[w]hether counsel's failure to call certain witnesses, request evaluations, and present evidence resulted from a strategic choice or an abandonment of the duty to investigate." The State asserts that Caddell's claim is refuted by the record and conclusory, and fails to identify any particular information that should have been investigated or presented in advance of his guilty pleas. We briefly address each of Caddell's contentions.

Caddell asserts that his counsel should have requested a psychological evaluation of the complaining witness. There are two complaining witnesses because there are two separate cases with different victims—one a 13-year-old girl and the other an adult male. Caddell's motion makes no distinction between the two victims, and he offers no specific factual contention regarding either one. The State argues:

> "In *State v. Gregg*, 226 Kan. 481,489, 602 P.3d 85 (1979), our Supreme Court held that a trial judge has discretion to order a psychiatric evaluation of the victim in a sex case if the defendant presents a compelling reason for such exam. Here, [Caddell] presents no reason, let alone a compelling one, as to why a psychological examination of the victim would be warranted."

We agree. Caddell simply presents a conclusory contention that his counsel was ineffective for failing to seek a psychological evaluation. But neither the record nor Caddell's motion and brief provide any factual basis establishing grounds for a psychological evaluation of either victim.

Next, while he faults counsel for not hiring a SANE/SART expert, Caddell offers no explanation or suggestion why a SANE/SART expert should have been hired before a plea deal was struck, and the record discloses no such rationale for it. At the preliminary hearing for the rape case the victim testified about the rape, and the State introduced evidence that Caddell's DNA was found on the victim's breast and that a penile swab of Caddell contained the victim's DNA. Similarly, in the aggravated sodomy case, the victim testified about the assault, and an anal swab of the victim revealed a sperm cell fraction from Caddell. Thus, the preliminary examination evidence appears relatively strong in both cases. But again, nothing in the record or Caddell's motion explains or even suggests what information a SANE/SART expert could have provided that would be of any benefit to Caddell considering the evidence against him.

Caddell likewise does not identify any information that a private investigator would or should have uncovered that would have been relevant to his decision to plead guilty in either case. The mere possibility there might be some unspecified information that may have been helpful to Caddell does not lead us to conclude that Caddell's counsel was ineffective. As is true of Caddell's other allegations, we find this contention to be entirely conclusory. Almost 10 years after the events that lead to the charges, Caddell offers nothing of evidentiary value in support of his contentions.

Finally, even if we were to assume that counsel's performance was deficient for the reasons cited by Caddell, his ineffectiveness claim fails the second part of the *Strickland* analysis for the same reasons we have just reviewed. Based on the totality of the circumstances set forth in the record and presented in the motion, Caddell simply fails to show that any deficiency in counsel's performance affected the outcome of the proceedings.

Caddell made the decision to plead guilty so there was no trial. The decision to plead guilty is not a strategic decision by counsel—only Caddell could make that

8

decision. Caddell does not allege that his counsel concealed or misrepresented the scope of pre-plea investigation or that he was unaware of the scope of investigation undertaken. We thus conclude Caddell knew there had been no SANE/SART expert, psychologist, or private investigator hired when he made the decision to plead guilty. To warrant relief, Caddell is required to identify some evidence demonstrating the substance or existence of information that was lacking in counsel's investigation leading up to the pleas. But Caddell does not identify any specific investigative or expert information that he should have had at the time of his guilty pleas or that otherwise would have impacted his decision to plead guilty. The State correctly characterizes Caddell's claims as conclusory and insufficient to warrant an evidentiary hearing. *Thuko*, 310 Kan. 80. Caddell fails to carry his burden to show with reasonable probability that deficient performance by his counsel affected his decision to plead guilty, and we find no prejudice to Caddell.

Caddell's other pre-plea contention is that counsel failed to properly advise him regarding his criminal history. He argues "[b]ased on incorrect advice of counsel, Mr. Caddell entered the plea agreement expecting a criminal history score of 'I' rather than 'D.'" He now contends that he would not have entered into the plea agreement had he known he would be sentenced as a criminal history D. While inaccurate advice regarding criminal history may well constitute ineffective assistance of counsel, the record here shows that Caddell was accurately informed of the criminal history to be used to determine his sentence before he entered his pleas. Caddell's pleas were entered with full knowledge that he faced a sentence that would apply criminal history D in both cases.

Before accepting Caddell's guilty pleas, the district court read the plea agreement aloud to all parties. The transcript reflects the court advised Caddell he would be sentenced in both cases with criminal history D. Immediately thereafter, defense counsel asked for a moment to speak with the prosecutor, and after speaking with the prosecutor, counsel asked for time to confer with Caddell. After conferring with Caddell, the record reflects the following exchange:

9

"[Defense counsel]: Judge, that is the plea agreement and that is what we signed. There was some misunderstanding and part of it is my fault. We thought the second case would be an I, rather than a D, and I discussed that with him, so it does make a difference from, that 13 would actually be 26 months. I have spoken to the defendant. He understands that. He still wants to go ahead with the plea, but that is what the colloquy was about.

"THE COURT: Okay. Is that your understanding of the negotiations?

"[Caddell]: Yeah. Yes, sir, I'm sorry."

In dismissing Caddell's claim on this point, the district court noted that Caddell was told his criminal-history score would be D in both cases, that Caddell accepted the plea agreement, and he pleaded guilty despite this knowledge. In *State v. Nelson*, No. 105,250, 2012 WL 402005, at *2 (Kan. App. 2012) (unpublished opinion), the Kansas Court of Appeals noted that "under Kansas law, a defendant is presumed to have known his or her criminal history when he or she entered into the plea agreement." Indeed, trial counsel "satisfies his or her obligation under Kansas law by reasonably informing the defendant of the range of sentencing possibilities and discussing the defendant's options." 2012 WL 402005, at *2. Caddell makes no assertion that he was unaware of the range of sentencing possibilities in his case.

We also observe that the record appears to show a misunderstanding only as to the sentence for the attempted sexual battery charge but not to the sentence for the rape. For purposes of ruling on the motion, we accept as true Caddell's contention he was told by counsel before the plea hearing that he would be sentenced as criminal history I for the rape case. Nonetheless, even if Caddell's trial counsel initially erred regarding the Caddell's criminal-history score, he quickly and timely corrected it. As the above exchange demonstrates, counsel (and the district court) informed Caddell of the correct criminal history *before* the guilty pleas were entered. As noted above, the decision to plead guilty was Caddell's and not a decision controlled by counsel. Caddell indicated

10

that he understood the plea agreement, which included that he would be sentenced as a criminal history D, and he made the decision to proceed with the guilty pleas. Thus, the record refutes Caddell's claim that he was uninformed about his criminal-history score as well as his claim that he would have rejected the plea agreement if he knew he would be sentenced as criminal history D.

*Caddell's counsel was not ineffective in the sentencing hearing*

In the plea agreement, the State agreed not to oppose Caddell's motion for a durational departure but, of course, the sentencing judge was not a party to the agreement and was not required to grant a departure sentence. *State v. Boswell*, 30 Kan. App. 2d 9, Syl. ¶ 6, 37 P.3d 40 (2001). Caddell's counsel filed a motion for durational departure and succeeded in persuading the court to depart from the off-grid life sentence called for in Caddell's case.

At sentencing, Caddell also asked the district court to durationally depart beyond the departure to a grid sentence by citing K.S.A. 21-6818—which allows further departure by the court but limits the departure to half the mid-number in the applicable grid box. The mid-number for Caddell for the rape was 253 months, and Caddell sought an additional departure to one-half of that number.

In addition to the mitigating factors cited in the plea agreement—the age of the defendant (25), the lack of any criminal history of a similar nature, and sparing the child victim from testifying at trial—counsel noted that while Caddell was only 25, Caddell had been through the traumatic experience in 2009 of a child dying from SIDS when sleeping with him, and another son was seriously injured in a horse accident in 2014 and had to re-learn how to walk and talk. Counsel reminded the court that all of Caddell's prior convictions had been misdemeanors and that he had strong family support, especially from his grandmother. The State opposed any further departure on Caddell's

11

sentence, noting that when it entered the plea agreement, it took into consideration that Caddell did not have any criminal history for sex offenses, accepted responsibility, and did not put the 13-year-old victim through the rigors of a trial. The prosecutor commented on the strength of the State's case, noting there was DNA evidence and reminded the court there were two separate victims and two completely different types of sexual crimes. Thus, the State argued against any further reduction in the sentence.

The district court noted that the rape case was a crime of extreme violence and commented on the favorable terms of the plea agreement negotiated by Caddell's counsel, under which Caddell was given a definite term of 20 years in prison with the possibility of a 15 percent for good time credit. It concluded by stating, "I don't think that it warrants any further reduction or any further departure by the Court beyond what has been recommended in the plea agreement." Caddell was thereafter sentenced to 266 months in prison as contemplated in the plea agreement.

Caddell argues his sentencing counsel presented only two potential factors in mitigation and "did not investigate or present any additional factors which were available to him." The criticism is that Caddell could have received an even more favorable sentence had counsel hired a psychologist to perform a sex-offender evaluation because it "might have led to either additional mitigating factors or demonstrated factors which would warrant a less severe sentence." The State, again, argues Caddell's claim is conclusory and without factual support as it does not specify what additional mitigating factors were "available to him." We agree with the State's position here.

To warrant an evidentiary hearing, Caddell has the burden to prove his K.S.A. 60-1507 motion by making "'more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales*, 300 Kan. at 881. Caddell has failed to meet his burden to show an evidentiary hearing should be granted. We are not persuaded that a psychological evaluation must be

12

done every time a sex offender seeks a departure sentence, and Caddell provides no authority for that proposition. In his case, Caddell offers no insight about what psychological factors might be revealed in his case, though he mentions it is possible an evaluation *might* have predicted a low risk of recidivism. He also offers no analysis explaining how information regarding his risk of recidivism would have affected the outcome. The district court was certainly aware that Caddell had no prior history of sexual offenses, and it made no comment expressing concern about his risk of recidivism.

Consistent with his other claims, even if the counsel was deficient for failing to obtain a sex-offender evaluation before sentencing to uncover unknown but potentially mitigating factors, Caddell has not presented a factual basis which demonstrates there are mitigating factors which establish a reasonable probability he would have received a lesser sentence but for counsel's failure. We see only conjecture and speculation.

Caddell's request for an evidentiary hearing is best characterized as a "fishing expedition" as described by our Supreme Court in *Stewart v. State*, 310 Kan. 39, 54-55, 444 P.3d 955 (2019):

> "Stewart's counsel would have us remand for an evidentiary hearing to permit a fishing expedition in the hopes that the 60-1507 movant might catch a fact that could lead to something favorable. To the contrary, it is incumbent upon the movant to show that a triable issue of fact already exists and is identifiable at the time of the motion."

Caddell's claims are conclusory and do not warrant an evidentiary hearing. Thus, we affirm the summary denial of Caddell's 60-1507 motion.

Affirmed.

13